621 F.2d 88
 8 O.S.H. Cas.(BNA) 1277, 1980 O.S.H.D. (CCH) P 24,594
Rosalee TAYLOR as Personal Representative of Enos Johnson,
Deceased, to his own use and to the use of Liberty
Mutual Insurance Co., Appellant,
v.
MOORE-McCORMACK LINES, INC., a Delaware Corporation (Owner
and operator of SS MORMACVEGA), Appellee.
 No. 79-1061.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 6, 1979.
Decided May 1, 1980.
 
 Bernard M. Goldstein, P. A., Baltimore, Md. (William D. Kurtz, on brief), for appellant.
 Warren B. Daly, Jr., Baltimore, Md. (Randall C. Coleman, Ober, Grimes & Shriver, Baltimore, Md., on brief), for appellee.
 Before WINTER, RUSSELL and HALL, Circuit Judges.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 This is an action against the defendant shipowner by the plaintiff longshoreman to recover in negligence for injuries incurred by him while working in a reefer space of the vessel. The district court found that the shipowner was not negligent and granted defendant's motion for summary judgment. The plaintiff has appealed. We affirm.
 
 
 2
 The plaintiff, with commendable frankness, accepts the correctness of the district court's reasoning that he had, under the 1972 Amendments of the Longshoremen's and Harbor Workers' Act, no right of action by way of "a negligence case against the shipowner . . . based upon the longshoring regulations imposed upon the stevedore-employer, on unseaworthiness or any theory of non-delegable duty." He thereby concedes by implication that if the principles enunciated in Chavis v. Finnlines Ltd. O/Y, (4th Cir. 1978) 576 F.2d 1072; Riddle v. Exxon Transp. Co., (4th Cir. 1977) 563 F.2d 1103; Bess v. Agromar Line, (4th Cir. 1975) 518 F.2d 738, and Gay v. Ocean Transport & Trading Ltd., (5th Cir. 1977) 546 F.2d 1233, and Anuszewski v. Dynamic Mariners Corp., Panama, (D.Md.1975) 391 F.Supp. 1143, aff'd., (4th Cir.) 540 F.2d 757 (1976), cert. denied, 429 U.S. 1098, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977), are applicable to this case, the dismissal of his action by the district court was proper. But he contends that his claim of liability "is not founded upon (the) concepts" found controlling in those cases, since he declares that his action is "based (entirely) upon a Coast Guard regulation unmistakably imposing (as he views) affirmative duties upon the vessel and her officers which the defendant violated." The Coast Guard regulation on which he relies is set forth in 46 C.F.R. § 97.70-15(c) (1977).[1] He distinguished the cases such as Chavis and other like cases, cited supra, in which the vessel was found not liable for injuries to a longshoreman caused by inhaling carbon monoxide gas while the longshoreman was working under the control and supervision of his stevedore-employer, as inapplicable because, whether from inadvertence or whatnot, the Courts in those cases had not considered the Coast Guard Regulation on which the longshoreman in this case rests his right of action. He suggests that, if the Coast Guard Regulation had been called to the Court's attention in those cases, the result would likely have been different. Finally, he cites Speller v. American Export Lines, Inc., (E.D.Va.1975) 1977 A.M.C. 501, in support of his position.
 
 
 3
 As thus framed by the appellant, the issue in this appeal is whether a longshoreman injured by reason of carbon monoxide poisoning incurred while engaged in stowing cargo in a hold of a vessel as an employee of the stevedore who had complete control over and supervision of his work can maintain a right of action in negligence against the vessel based on the application of the Coast Guard Regulation, cited supra. The District Court answered the question in the negative and denied recovery. We agree with that result, though not entirely for the same reasons as those given by the district judge. We shall state briefly our reasons for so concluding.
 
 
 4
 We note at the outset that the plaintiff concedes that the Secretary of Labor has issued regulations under the Occupational Safety and Health Act (OSHA)[2] governing the responsibility of the stevedore to conduct tests and to take appropriate action for the protection from carbon monoxide poisoning of the health and lives of longshoremen employed by it while working in the hold of a ship where a gasoline combustion motor is being operated.[3] These regulations have been repeatedly held to impose an affirmative duty on the stevedore, the violation of which would be negligence. It is, however, the plaintiff's position that, in addition to this duty imposed on the stevedore by the OSHA regulations, a like and "parallel" duty is imposed by the Coast Guard regulation, referred to supra, on the vessel to protect the longshoreman while working for the stevedore, in the hold of the vessel. What the plaintiff in effect argues is (1) that there is a like regulation issued separately by both the Coast Guard and the Secretary of Labor under their own special statutory authority, both of which prescribe the steps to be taken to protect the longshoreman while working as an employee of the stevedore in the hold of a vessel and (2) that the longshoreman may rest a claim of negligence on both or either of these separate regulations issued by the two separate agencies.
 
 
 5
 It is true that the Safety and Health Regulations for Longshoremen, as issued by the Secretary of Labor under the authority of the Occupational Safety and Health Act, 29 U.S.C. § 651, et seq., 29 C.F.R. § 1918.93(a)(1)(i)(ii) and (iii), and the Coast Guard Regulations, issued under Coast Guard's general authority, 14 U.S.C. § 2, 46 C.F.R. § 97.70-15(a)(b) and (c), are in essence identical in the tests they prescribe for work in areas rendered dangerous by the likely presence of poisonous fumes. Each set of regulations imposes an obligation that, when "power-operated industrial trucks" are used in an area of the vessel "exposed to carbon monoxide or other hazardous vapors" the ship or stevedore, as the case may be, is required to see "that tests of the carbon monoxide content of the atmosphere are made as frequently as conditions require to insure that dangerous concentrations do not develop * * * in the area in which persons are working" and that the tests be conducted "by persons acquainted with the test equipment and procedure." The regulations proceed to be specific on the atmospheric levels to be maintained in the areas: Thus, the carbon monoxide concentration is to be "maintained at not more than 50 parts per million (0.005%) as a time-weighed average, and persons shall be removed from the area if the concentration exceeds 75 parts per million (0.0075%)." The Longshoring Regulations do not prescribe any particular employee of the stevedore as responsible for seeing that the regulation is observed; the Coast Guard Regulation designates the "senior deck officer" as the responsible party for overseeing the observance of the regulation. Under the plaintiff's argument, both of these regulations are applicable whenever the stevedore, as independent contractor having complete control over and responsibility for stowing cargo on a vessel and for the safety of his employees engaged in that work, introduces a power-operated industrial truck into any area of the vessel exposed to hazardous vapors while performing its duties as a stevedore.
 
 
 6
 Under the contention of the plaintiff, two separate governmental departments would, by their regulations, require two separate employers to make the same test at the same time even though the work being performed is under the control of but one of such employers and even though the responsibility for the safety of the employees intended to be protected rests upon only one of those employers. It is difficult to believe that either Congress or the executive departments themselves ever intended or authorized such a pyramiding of regulations as the argument of the plaintiff would compel. We suggest that it is more reasonable to assume that the two regulations were intended to cover separate and different types of employees and separate and different situations and operations, and this conclusion finds convincing support in the legislative purposes of the two agencies and in the scope of regulations the two agencies are authorized to issue. Thus, the Occupational Safety and Health Act (OSHA), under which the Labor Department's regulations were issued specifically provides that the Department shall not issue regulations setting forth requirements to be observed in the interest of the safety of employees in any area covered by the regulations of another governmental agency. Section 4(b) (1) of the Act, 29 U.S.C. § 653(b)(1) so provides in very explicit terms:
 
 
 7
 "Nothing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies, * * * exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health."
 
 
 8
 The very purpose of Section 4(b)(1) was, as the Courts have repeatedly recognized, "to eliminate any duplication in the efforts of federal agencies to secure the well-being of employees." Marshall v. Northwest Orient Airlines, Inc., (2d Cir. 1978) 574 F.2d 119, 122; Organized Migrants in Commun. Act., Inc. v. Brennan, (D.C. Cir. 1975) 520 F.2d 1161, 1166-68; Southern Pac. Transp. Co. v. Usery, (5th Cir. 1976) 539 F.2d 386, 392, cert. denied, 434 U.S. 874, 98 S.Ct. 221, 54 L.Ed.2d 154 (1977). And this proscription of duplicating regulations has been specifically applied to regulations issued by the Department of Labor under OSHA and of the Coast Guard governing safety regulations covering longshoremen and seamen. Clary v. Ocean Drilling and Exploration Co., (5th Cir. 1980) 609 F.2d 1120, 1122; Mott v. Odeco, (5th Cir. 1978) 577 F.2d 273, 278, n. 6, cert. denied, 440 U.S. 912, 99 S.Ct. 1226, 59 L.Ed.2d 461 (1979); National Marine Service, Inc. v. Gulf Oil Co., (E.D.La.1977) 433 F.Supp. 913, 919-20, aff'd (5th Cir.) 608 F.2d 522 (1979). Accordingly, if the plaintiff's theory is accepted, the regulations of the Department of Labor covering safety measures to be observed in connection with longshoring in confined areas subject to hazardous vapors would be invalid because there are other regulations covering the same situation and involving the same employees issued by the Coast Guard. What this would mean is that the Department of Labor, though under § 941, 29 U.S.C., it is given exclusive jurisdiction over the working conditions and safety of longshoremen, would be without control over their work in any area of a vessel where a power-operated truck or forklift is used. This contention, which would nullify Section 941, is contrary to repeated rulings by the Occupational Safety and Health Review Commission[4] and by the Courts.
 
 
 9
 The leading case decided by the Occupational Safety and Health Review Commission on this point is California Stevedore and Ballast Co., CCH Occupational Safety & Health Decisions, P 17,931, Docket No. 1132 (1974). In that appeal the Commission reviewed a finding of a violation of a regulation issued by the Secretary of Labor under OSHA requiring the guarding of hazardous moving winches, 29 C.F.R. 1918.53(a)(1). The stevedore responded to the charge of violation with the contention that Section 4(b)(1) of OSHA invalidated the Secretary's OSHA regulation since the Coast Guard had a safety regulation or standard "similar in scope to the Occupational Safety and Health Administration's standard (the stevedore) was cited for having violated." The Commission first formulated the issue thus posed for review. It said:
 
 
 10
 "The question in this case is not whether the Coast Guard's regulations cover the same hazard. Rather, it is whether the Coast Guard has statutory authority to 'prescribe or enforce standards or regulations' applicable to the working conditions of longshoremen."
 
 
 11
 The Commission proceeded to conclude that the Secretary of Labor had exclusive jurisdiction under Section 941, 29 U.S.C. to prescribe regulations governing working conditions of longshoremen and that the Coast Guard's safety regulations applied only to "seamen," not to longshoremen. The reasoning of the Commission to this point was tersely stated as follows:
 
 
 12
 "According to the statement of authority (of the Coast Guard Regulations) set forth in 46 C.F.R. Part 92, the regulation relied upon by Respondent was promulgated pursuant to the authority granted by various provisions of Titles 46, 49, and 50 of the United States Code. We have examined the authorizing provisions and in addition have examined the entirety of Title 46, U.S.Code. With the arguable exception of one provision relating to the carriage of dangerous substances the provisions of the Shipping Code as they relate to occupational safety appear to apply to seamen as a class to the exclusion of longshoremen as a class. Indeed, were this not the case there would have been no necessity to amend the Longshoremen's and Harbor Workers' Compensation Act so as to authorize the Secretary of Labor to promulgate and enforce safety standards relating to longshoring operations. Nor would there have been any necessity for Congress to adopt longshoring standards issued under the Compensation Act as occupational safety standards under section 4(b)(2) of this Act."
 
 
 13
 The Commission reaffirmed its ruling in California Stevedore in T. Smith & Son, Inc., CCH Occupational Safety & Health Decisions, P 18,536, Docket # 2240 (1974). The ruling by the Commission in both California Stevedore and Smith has been implicitly approved and adopted in the recent case of Clary v. Ocean Drilling and Exploration Co., supra.
 
 
 14
 Contrary to this conclusion of the Commission and of the Fifth Circuit in Clary, the plaintiff would find from the circumstance that there was some cooperation between the Coast Guard and the Department of Labor in the development of their regulations in connection with dangerous vapors in working areas of a vessel evidence that both regulations were intended to apply to the working conditions of longshoremen working as employees of a stevedore in loading cargo on a vessel in port. On the contrary, we think such cooperation, resulting in similar regulations, confirms the correctness of the Commission's determination. Both the Coast Guard and the Secretary of Labor recognized the hazard and the need to provide regulations in connection with it. It was reasonable for the two agencies to collaborate in developing the proper regulations and to issue separate regulations by the two agencies. But, and this is the important fact, such separate regulations would only have been approved if the two agencies the Coast Guard and the Department of Labor had separate jurisdictional areas of responsibility in connection with the hazard. This is so because if it is assumed that the Coast Guard had jurisdiction to prescribe regulations over longshoremen while working under the control of a stevedore loading cargo on a vessel, then, under Section 4(b)(1) of the Act, 29 U.S.C. § 653(b)(1), the Secretary of Labor would have been, as we have seen, without power or authority to issue a regulation covering longshoremen under those circumstances. Thus, the action of the Coast Guard and the Secretary, in issuing separate regulations covering the same hazard, is clear evidence that the two departments concerned regarded their jurisdictional authority as different. Such a conclusion supports the Commission's ruling that the Coast Guard's regulations cover exclusively seamen working, primarily at sea, under conditions where a power-operated truck or forklift is being used in a compartment of a vessel and the Secretary's regulations cover longshoremen working in port under similar circumstances in connection with the stowing of cargo in the vessel.
 
 
 15
 In summary, we think that Section 2, 14 U.S.C., makes it quite clear what is the proper delineation of responsibility between the Coast Guard and the Secretary of Labor in this area: The Coast Guard has responsibility for the safety of "seamen" under regulations issued by it, whereas the Department of Labor, under OSHA, has statutory responsibility for the safety of longshoremen at work under regulations issued by it. The respective responsibilities, thus established, are exclusive. This exclusivity is expressly declared in connection with longshoring; it is implicit so far as seamen are concerned. See Clary. All this has been recognized in the many cases which have arisen in which there were similar regulations dealing with like hazards promulgated by the Secretary of Labor and the Coast Guard. When longshoremen were involved the courts have looked exclusively to the regulations issued by the Secretary of Labor under OSHA and never to the Coast Guard; in cases where seamen were involved, the courts have looked exclusively to Coast Guard regulations. And this was not because, as the plaintiff would urge, the courts have overlooked the regulations of the other agency in making its decision but because in each instance it recognized the exclusivity of the regulations of the particular agency having responsibilities, whether for seamen or longshoremen. If this reasoning be followed in this case it is manifest that the only regulations applicable to the case are those of the Department of Labor, as issued under OSHA, and that the plaintiff cannot, therefore, ground a claim of negligence against the vessel under the Coast Guard regulations.
 
 
 16
 The judgment of the district court, dismissing plaintiff's action and granting judgment in favor of the defendant is accordingly
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 The Regulation is as follows:
 "Spaces exposed to carbon monoxide or other hazardous vapors from exhaust of power-operated industrial trucks shall have adequate ventilation. The senior deck officer shall see that tests of the carbon monoxide content of the atmosphere are made as frequently as conditions require to insure that dangerous concentrations do not develop. Such tests shall be made in the area in which persons are working, by persons acquainted with the test equipment and procedure. The carbon monoxide concentration in the holds and intermediate decks where persons are working shall be maintained at not more than 50 parts per million (0.005%) as a time-weighed average, and persons shall be removed from the area if the concentration exceeds 75 parts per million (0.0075%). When necessary, portable blowers of adequate size and location shall be utilized."
 
 
 [2]
 29 U.S.C. § 651, et seq
 
 
 [3]
 29 C.F.R. § 1918.93(a)(i) and (iii)
 
 
 [4]
 The Commission's appointment is authorized under 29 U.S.C. § 661