U. S. AIR, INC., Formerly Allegheny Airlines, Inc., Petitioner,

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, and Secretary of Labor, Respondents.

No. 81–1528.

United States Court of Appeals, Fourth Circuit.

Argued March 31, 1982.

Decided July 2, 1982.

As Modified Aug. 11, 1982.

16. Count 3 named only CSC, and so was properly dismissed *in toto.*

**1192**

Andrew J. Stites, U. S. Air, Inc. (E. Carl Uehlein, Jr., Anita W. Schoomaker, Morgan, Lewis & Bockius, Washington, D. C., on brief), for petitioner.

Allen H. Feldman, Counsel for Appellate Litigation, U. S. Dept. of Labor, Washington, D. C. (T. Timothy Ryan, Jr., Sol. of Labor, Frank A. White, Associate Sol. for Occupational Safety and Health, Shelley D. Hayes, Mark J. Lerner, Washington, D. C., on brief), for respondents.

Before BRYAN, Senior Circuit Judge, and RUSSELL and ERVIN, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

U. S. Air, Inc. (U. S. Air) petitions for review of a final order of the Occupational Safety and Health Review Commission (Commission), finding violation of the Occupational Safety and Health Act of 1970 (Act), 29 U.S.C. § 651 *et seq.*, on its part. Jurisdiction for such review exists under Section 11(a) of the Act, 29 U.S.C. § 660(a).

There were three violations charged against U. S. Air in the citations under review.[1] The first of these related to the exit doors for egress from U. S. Air's passenger lounge at The John F. Kennedy International Airport in metropolitan New York; the other two arose under OSHA's personnel protection equipment standards at the same airport. The dispositive issue in connection with the three violations is the applicability of the exemption provision of the Act to the activity involved in the alleged violations.[2] This exemption section is in the following language:

> "Nothing in this Act shall apply to working conditions of employees with respect to which other Federal agencies, and State agencies acting under section 274 of the Atomic Energy Act of 1954, as amended (42 USCS § 2021), exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health." 29 U.S.C. § 653(b)(1).

In resolving the exemption's applicability in any given case, "[t]he crux of the controversy," as we said in *Southern Ry. v. Occupational Saf. & H. Review Comm.*, 539 F.2d 335, 339 (4th Cir.), *cert. denied* 429 U.S. 999, 97 S.Ct. 525, 50 L.Ed.2d 609 (1976), "is the phrase 'working conditions' in Section 4(b)(1)." We concluded in that case that "the term 'working conditions' as used in Section 4(b)(1) means the environmental area in which an employee customarily goes about his daily tasks" and that "when [another] agency has exercised its statutory authority to prescribe standards affecting occupational safety or health for such an area, the authority of the Secretary of La-

---

1. There were other violations charged. Some were withdrawn by the Secretary and others were conceded by U. S. Air. As we have said, there are but three violations involved in this appeal.

2. Section 4(b)(1) of the Act, 29 U.S.C. § 653(b)(1).

bor in that area [under the Act] is foreclosed." *Id.* at 339. Moreover, preemption under Section 4(b)(1) is not a matter of affirmative defense but is *jurisdictional,* properly raisable "initially on appeal or by the court *sua sponte,*" without regard to whether it was suggested at the administrative hearing on the citation. *Columbia Gas of Pennsylvania, Inc. v. Marshall,* 636 F.2d 913, 918 (3d Cir. 1980).

The Commission takes sharp issue with the definition of "working conditions" as declared by us in *Southern Ry.* Its position is that "working conditions," as used in the exemption section, embraces as essential elements both "environment" and "discrete hazard." Under this construction, the valid regulations exercised by another agency, which will work a preemption of the Act, must relate both to the same "environment" and to the same "discrete hazard." An illustration of the manner in which this construction would operate is set forth by an advocate of the Commission's view in the Note, *Interpreting OSHA's Pre-Emption Clause: Farmworkers as a Case Study,* 128 U.Pa.L.Rev. 1509 at 1530 (1980): ". . . if [the other agency] adopted a regulation involving only fire alarm systems (a discrete hazard), OSHA could still enforce its own regulations concerning fire extinguishers (another discrete hazard within the same category of working conditions)." This is the same construction urged unsuccessfully upon us earlier in *Southern Ry.* We were unpersuaded then; we remain unpersuaded.

What, in effect, the Commission posits in this connection is that if the regulation adopted and applied validly by another agency does not deal in the same way with the same "discrete hazard" in the "working environment" as does the OSHA regulation then there is no preemption. Such an argument, if accepted, would allow preemption only in those situations where the regulations of the other agency were substantially

the same as those of OSHA.[3] If this had been the intention of Congress, there would have been no point in including in the Act an exemption section. It is not necessary that the regulations of the other agency be the same or substantially the same as those of OSHA in order to meet the test provided for exemption under Section 4(b)(1); it is sufficient as we declared in *Southern Ry.* that the FAA regulations cover the working conditions in the specific "environmental area in which an employee customarily goes about his daily tasks."[4] And the facts involved in one of the citations involved in this appeal emphasizes the reasonableness of the construction adopted by us in *Southern Ry.* and reaffirmed here of the term "working conditions" in Section 4(b)(1).

The first of the three citations herein relates to U. S. Air's passenger lounge in The John F. Kennedy International Airport in metropolitan New York City. This lounge has four doors which provide egress from the lounge for departing or arriving passengers and employees. Two of these doors were locked except when opened by an U. S. Air employee; the other two were blocked by advertising signs five feet high and two feet wide. This procedure was followed by way of compliance with certain rules and regulations issued by the Federal Aviation Administration (FAA). These regulations were issued under the authorization given by § 1357, 49 U.S.C. to the Secretary of Transportation. That statute directed the Secretary to prescribe "such reasonable rules and regulations requiring such practices, methods, and procedures . . . as he may deem necessary to protect persons and property aboard aircraft . . . against acts of criminal violence and aircraft piracy" and, more particularly, to promulgate regulations establishing at all airports "air transportation security programs providing a law enforcement presence and capability at such airports ade-

---

**3.** This position has provoked a vigorous dissent from the Review Commission Chairman, Robert D. Moran, who has aptly characterized it as the "nook-and-cranny" approach, which, if followed, would mean that "OSHA realistically would never be exempted from jurisdiction."

Note, *Southern Railway Co. v. OSAHRC & Brennan: Is Dual Coverage Feasible?* 3 Detroit C.L.R., 625, 630 (1976).

**4.** 539 F.2d at 339.

## 1194

quate to insure the safety of persons traveling ... from acts of criminal violence."[5] In prescribing regulations under this Congressional mandate, the Secretary issued regulations requiring all airlines such as U. S. Air to "prepare in writing and submit for approval by the [FAA] Administrator its security program including the screening system prescribed by paragraph (b) of this section, and showing procedures, facilities, or a combination thereof, that it uses or intends to use to support that program and that are designed to (1) Prevent or deter unauthorized access to its aircraft."[6] U. S. Air prepared and submitted its security program as prescribed by this regulation. Included in such program were obstructions provided for "access to aircraft" from its passenger lounge.

It was in keeping with this program, approved by the FAA Administration, that U. S. Air had locked two of the exit doors, to be opened only by its employees, and blocked the other two with obstructions. Incidentally, too, this procedure is the one followed generally at all airports by the airlines and represents reasonable compliance with the FAA regulations as well as with the Congressional mandate. It clearly covers safety conditions in the "environmental area in which an employee customarily goes about his daily tasks," and it represents the exercise of statutory authority by the FAA to "prescribe or enforce" either "standards or regulations" which *affect* occupational "safety or health" in the area in question, as falls within the exemption.

▪ It is the Commission's position, as stated in its order sustaining the violation relating to the exit doors in the passenger lounge, that the FAA regulations were directed at protection against terrorists, air pirates and extortioners for both airline customers and aircraft crews and personnel and that such regulations so directed did

not preempt the right of the Secretary of Labor to require the doors in the passenger lounge, which the FAA, under its approved program, had required to be blocked or obstructed, to be opened for "[f]ree and un-obstructed egress from the departing area" in order to protect employees against fire hazards. In effect, it is declaring that, if the FAA does not require by its regulations precisely the same safety standards against the same discrete hazard as has the OSHA in this departure area of the airport (*i.e.,* safety against the fire hazards), such regulations do not preempt the OSHA's standards. The result of such an argument would be that under FAA procedures mandated by Congress in the interest of passenger and employee safety, U. S. Air would be required to keep locked or obstructed the four doors for egress from this one passenger lounge, whereas, under OSHA rules issued validly in the interest of passenger and employee safety, U. S. Air would be compelled to keep unlocked or unobstructed the very same four doors in the same passenger lounge. This was the very result—the result created by conflicting rules issued by separate agencies covering safety in a particular working environment—that Congress intended to obviate by including in the Act Section 4(b)(1).[7] Giving to the exemption statute the effect intended by Congress, it is manifest that the exercise of jurisdiction over the doors in the working environment of the passenger lounge involved in this case by the FAA preempted any jurisdiction in the Secretary of Labor, by regulations under the Act, over such area.

It is interesting that the administrative law judge, to whom this citation was referred for trial, was unable to follow the argument now advanced by the Commission in connection with this alleged violation and reached the same conclusion which we have. In his decision, he said that the approved

---

5.  § 1357(a)(1) and (b).

6.  14 C.F.R. § 121.538(c)(1) (1980).

7.  *See Ibid.,* 3 Detroit C.L.Rev. at 629:

"The intent of Section 4(b)(1) was to exempt OSHA coverage under circumstances which, if the exemption section did not exist, would have led to dual federal agency regulation over working conditions."

security program of U. S. Air in this lounge area, as validly issued under the FAA regulations, "equally affects the safety and health of the respondent's departure area employees, its pilots and crews and its passengers. The protection afforded respondent's employees, pilots and crews, is fundamental and not incidental; it is inseparable from that approved for its airline passengers." He, therefore, concluded that "since the F.A.A., a Federal Agency, has authority to regulate safety and health working conditions in the subject departure area and does exercise that authority, I find that the working conditions [in that area] are not subject to OSHA's regulations or standards." The Commission, however, reversed that decision of the administrative law judge and, as we have already noted, sustained the citation issued for failure of U. S. Air to conform to the OSHA fire standards in the maintenance of the exit doors in the passenger departure area at its station in The John F. Kennedy International Airport. We disagree and vacate the citation for violation of 29 C.F.R. § 1910.-37(k)(2), and the final order of the Commission affirming that citation.

█ There are two other citations of which U. S. Air complains. These relate to alleged protective equipment violations of 29 C.F.R. § 1910.132(a). It was not disputed that the FAA has regulations which provide for similar protective equipment in the working environment, and, in oral argument in this Court, counsel for the Commission, with becoming candor, conceded that if we concluded that the issue of preemption was properly before us, vacation of the citations was required. The procedural ground on which the Commission seeks to sustain these two citations is that a claim of preemption under Section 4(b)(1) of the Act is an affirmative defense and must be raised at trial or it is lost. Admittedly U. S. Air did not raise such a claim against these two alleged violations at the hearing thereon before the administrative law judge. Between the date when the administrative law judge gave the parties notice of his decision sustaining the citations and the docketing twenty days later of the decision for review by the Commission, a party to the proceedings may, under the Commission's procedure, petition to reopen the hearing before the law judge who heard the proceedings. U. S. Air petitioned to reopen the hearing on these alleged violations within the twenty days in order to permit it to raise preemption. The administrative law judge denied the motion on the ground that the motion was not supported by a showing of "newly discovered evidence or that [U. S. Air] was excusably ignorant of that evidence." He accordingly refused to consider the claim of preemption.

█ This decision of the administrative law judge refusing to consider preemption in the case of these two alleged violations was affirmed by the Commission. The ruling of the administrative law judge, accepted by the Commission, was, however, in error. Preemption as mandated by Section 4(b)(1) is not an affirmative defense but is a jurisdictional limitation upon OSHA's authority to issue a citation. As such it may be raised "initially on appeal or by the court sua sponte." *Columbia Gas of Pennsylvania, Inc. v. Marshall, supra.*[8] Since it is conceded that if preemption exists, it is unnecessary to remand the violations to the Commission for further hearing and that we may properly direct, without remanding the matter to the Commission, the vacation of the two citations under 29 C.F.R. § 191.-132(a), we accordingly reverse the order of the Commission affirming such citations and vacate the same.

The citations herein are hereby vacated and the decision of the Commission is reversed.

---

8. 636 F.2d at 918.