Robert B. **REICH,** Secretary of Labor; **United States Department of Labor,** Plaintiffs–Appellees,

v.

Wayne **MUTH,** individually; Ed **Speary,** individually; Jason **Nuss,** individually; Mike **Warner,** individually; Hiller Systems, Incorporated, Defendants–Appellants,

and

Randy **Hughes,** individually, Defendant.

Robert B. **REICH,** Secretary of Labor; **United States Department of Labor,** Plaintiffs–Appellants,

v.

Wayne **MUTH,** individually; Ed **Speary,** individually; Jason **Nuss,** individually; Mike **Warner,** individually; Hiller Systems, Incorporated, Defendants–Appellees,

and

Randy **Hughes,** individually, Defendant.

Nos. 93–1689, 93–1793.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 8, 1994.

Decided Sept. 1, 1994.

---

**ARGUED:** Guilford D. Ware, Crenshaw, Ware & Martin, Norfolk, VA, for appellants. Bruce Justh, Asst. Counsel for Appellate Litigation, U.S. Dept. of Labor, Washington, DC, for appellees. **ON BRIEF:** James L. Chapman, IV, Martha M. Poindexter, Crenshaw, Ware & Martin, Norfolk, VA, for appellants. Thomas S. Williamson, Jr., Solicitor of Labor, Joseph M. Woodward, Associate Solicitor for Occupational Safety and Health, Barbara Werthmann, Counsel for Appellate Litigation, U.S. Dept. of Labor, Washington, DC, for appellees.

Before ERVIN, Chief Judge, WIDENER, Circuit Judge, and WILSON, United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by published opinion. Chief Judge ERVIN wrote the opinion, in which Judge WIDENER and Judge WILSON joined.

## OPINION

ERVIN, Chief Judge:

In response to a refusal to comply with an administrative subpoena, the Secretary of

Labor, acting through the Occupational Safety and Health Administration (hereinafter "the Secretary" or "OSHA"), brought this enforcement action, pursuant to 29 U.S.C. § 657(b), in the United States District Court for the Eastern District of Virginia, at Norfolk. The district court ordered the respondents to comply with the subpoena, but denied OSHA's request to disqualify counsel from representing both the employer being investigated and its subpoenaed employees. Each side appealed the adverse ruling to this court, which has jurisdiction under 28 U.S.C. § 1291. *See Reich v. National Engineering & Contracting Co.,* 13 F.3d 93 (4th Cir.1993). For the reasons set forth below, we affirm.

## I.

The facts underlying the present enforcement action can be briefly stated. The M/V CAPE DIAMOND is a privately owned seagoing vessel that was being refurbished at the facilities of Norfolk Shipbuilding and Dry Dock Corporation in Norfolk, Virginia at the time of the incident in question. On March 3, 1993, the CAPE DIAMOND was being inspected by the Coast Guard following its refurbishment and was scheduled to set sail the following day. On board were the ship's crew, Coast Guard inspectors, employees of VSC, Inc., a company that had been hired to evaluate the condition of the vessel's machinery, and employees of Hiller Systems, Inc., a company that had been hired by the ship's operator to assist the Coast Guard in its inspection of the $CO_2$ fire extinguishing system and effect any necessary repair. During the testing of the fire extinguishing system, an accident occurred and carbon dioxide gas filled the engine room, killing an employee of the Coast Guard and an employee of VSC.

The Coast Guard immediately began an investigation into the circumstances surrounding the fatalities. As part of its investigation, the Coast Guard conducted an extended formal hearing on the matter. In addition, OSHA was notified of the fatalities and began its own investigation. When an OSHA investigator appeared at the ship on the day of the accident, attorneys for Hiller would not allow him to interview any Hiller employees, contending that the matter was outside the scope of OSHA's jurisdiction. OSHA subsequently issued administrative subpoenas to Hiller and to four Hiller employees. All indicated that they would not comply.

The matter then moved to court, where OSHA petitioned the court to order the subpoenaed parties to comply. During this proceeding, OSHA moved to disqualify Crenshaw, Ware & Martin, attorneys for Hiller, from also representing two of Hiller's employees, Muth and Speary. OSHA later modified this request to ask that they be disqualified only from attending OSHA's private questioning of Muth and Speary. At the end of an extended and well-argued hearing on this matter, the district court ordered enforcement of the administrative subpoenas, but denied the motion to disqualify.

## II.

█ As this court recently restated, four elements are considered in determining whether an OSHA administrative subpoena is to be enforced: (1) the subpoena must be within OSHA's authority; (2) it must satisfy due process; (3) the information sought must be relevant and material to an OSHA investigation; and (4) the subpoena must not be unduly burdensome. *Reich v. National Engineering & Contracting Co.,* 13 F.3d 93, 98 (4th Cir.1993). Unlike *National Engineering,* however, in which the dispute related to the third element, relevance, here Hiller and the individual defendants (who for convenience will be referred to in this section as "Hiller") assert that OSHA authority does not reach the instant case. We disagree.

The Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–78 (the Act), was enacted "in response to an appalling record of death and disability in our industrial environment, and it was the clear intendment of Congress to meet the problem with broad and, hopefully, effective legislation." *Southern Ry. Co. v. Occupational Safety & Health Review Comm'n,* 539 F.2d 335, 338 (4th Cir.), *cert. denied,* 429 U.S. 999, 97 S.Ct. 525, 50 L.Ed.2d 609 (1976). The statute authorizes the Secretary to enact and enforce national occupational safety and health standards and, more broadly, to undertake investigations of

company workplaces and practices "[i]n order to carry out the purposes of this chapter." 29 U.S.C. § 657(a). The Act further authorizes the Secretary, "[i]n making his inspections and investigations under this chapter", to "require the attendance and testimony of witnesses and the production of evidence under oath." *Id.* § 657(b). It is under this authority that the present action arises.

Hiller does not contest the power of the Secretary, as a general matter, to subpoena witnesses and documents. Rather, it argues that, under 29 U.S.C. § 653(b)(1), the Secretary's reach does not extend to this matter because of the comprehensive nature of Coast Guard regulation of seaman working conditions. The contested provision reads:

> Nothing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies ... exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health.

It is clear that this provision aims to avoid the confusing and wasteful duplication of effort that would result from multiple points of origin for regulatory schemes. It avoids such waste by wisely ceding responsibility for occupational standards in particularized fields to the regulatory bodies specifically tasked with their oversight and control, while leaving to OSHA the remaining general field of regulation outside specialized areas demanding specialized expertise.

The general experience of this division of labor appears to have been successful, and this court has developed a series of rules that have assisted in discerning the limitations that 29 U.S.C. § 653(b)(1) places upon OSHA regulatory jurisdiction. *See Southern Ry. Co., supra; U.S. Air, Inc. v. Occupational Safety & Health Review Comm'n,* 689 F.2d

1191 (4th Cir.1982). These cases, which have involved the question of the authority of OSHA regulation over a single set of employees in a single work area, have focused upon the question of whether the other involved federal agency actually had exercised its regulatory authority over the "working environment" involved in each case.[1]

Nevertheless, there are certain areas, particularly in the field of transportation, in which the factual realities of the industry have made the application of this rule somewhat difficult. In contrast with the focus on *place* that is revealed in *Southern Ry. Co.* and *U.S. Air,* in *Taylor v. Moore–McCormack Lines, Inc.,* 621 F.2d 88 (4th Cir.1980), this court's analysis of overlapping regulatory structures focused on the *people* involved. While *Taylor* itself did not involve the enforcement of a regulatory rule, the case required this court to determine, for purposes of a personal injury suit, whether the Coast Guard or OSHA had regulatory authority over the conditions under which a longshoreman worked in the enclosed space of a ship in which a gasoline motor was operating. Although both the Coast Guard and OSHA had issued virtually identical regulations regarding these workplace conditions, a personal injury action would lie only under the Coast Guard regulations. The shipping line argued that OSHA regulations governed Taylor, a longshoreman. This court agreed. Whereas *U.S. Air* would have mandated that OSHA's regulation give way to the Coast Guard's regulation, since it clearly covered the environmental area in question, the court focused not on the *place* but on the *people.* Thus, the center of our holding was that

> the two regulations were intended to cover separate and different types of employees and separate and different situations and operations, and this conclusion finds convincing support in the legislative purposes

---

1. In *Southern Ry. Co.,* this court explained:
   [W]e are of the opinion that the term "working conditions" ... means the environmental area in which an employee customarily goes about his daily tasks. We are further of the opinion that when an agency has exercised its statutory authority to prescribe standards affecting occupational safety or health for such an area, the authority of the Secretary of Labor in that area is foreclosed.

539 F.2d at 339. Because the Federal Railroad Administration had not exercised its regulatory authority, the court found the OSHA regulation to be valid. In contrast, in *U.S. Air,* the Federal Aviation Administration had actually exercised regulatory authority over the environmental area in question, and the court thus held OSHA's regulations to have been displaced. 689 F.2d at 1194.

of the two agencies and in the scope of regulations the two agencies are authorized to issue.

*Taylor,* 621 F.2d at 91. The court implicitly acknowledged the problem with a bright-line approach focusing on the place involved when it stated:

> [I]f plaintiff's theory is accepted, the regulations of the Department of Labor covering safety measures to be observed in connection with longshoring in confined areas subject to hazardous vapors would be invalid because there are other regulations covering the same situation and involving the same employees issued by the Coast Guard. What this would mean is that the Department of Labor ... would be without control over [longshoremen's] work in any area of a vessel where a power-operated truck or forklift is used.

*Id.* Faced with such a difficulty, the court adopted the approach that OSHA had taken in other cases:

> The Coast Guard has responsibility for the safety of 'seamen' under regulations issued by it, whereas the Department of Labor, under OSHA, has statutory responsibility for the safety of longshoremen at work under regulations issued by it.

*Id.* at 93. That same division of labor had previously been adopted by the Fifth Circuit in *Clary v. Ocean Drilling and Exploration Co.,* 609 F.2d 1120 (5th Cir.1980).[2]

■ Although facially difficult to square, in fact these approaches are not inconsistent. The crucial difference is what may be called the presence of a "migrating workforce." Taken together, these cases teach that OSHA regulatory authority is displaced where the factual situation involves otherwise overlapping regulation of a single workplace and a single workforce. In contrast, where

differing workforces occupy a single space at separate times, and where each workforce is clearly regulated in its "natural" environment by a separate regulatory body, OSHA's regulatory power is not displaced as to the workers who otherwise fall within its ambit. Thus, as *Taylor* indicates, it is not inconsistent to find that Coast Guard regulations govern seamen in the course of their duties on ship while also finding that OSHA regulations control standards relating to the working environments of longshoremen while they are engaged in their assigned duties within the body of a ship.

While this approach lacks the simplistic beauty and appeal that applying a single label to a particular work area offers, it recognizes the difficulty that emerges in certain industries, such as transportation, where a workforce occupies multiple environments, some of which come under competing regulatory authority, and where a single working environment is occupied by multiple workforces otherwise separately regulated. Indeed, unlike the case of a single workforce, where multiple points of regulatory authority can only confuse employers attempting faithfully to comply with their requirements, this approach in this particularized and difficult area provides a seamless continuity to an employer across work environments regarding the regulatory authority to which she must attend.

■ Turning to the case at hand, we begin our review with the clear acknowledgement that we deal with the matter at its earliest inception, the enforcement of an administrative subpoena issued before any particular charge has been made against the company. As noted at the outset, the Secretary is given broad authority under the Act to undertake investigations "to carry out the purposes of this chapter." 29 U.S.C. § 657(a). In addi-

---

**2.** We also note that OSHA has acknowledged explicitly its limited authority over seamen aboard Coast Guard-inspected vessels. OSHA has entered into a "Memorandum of Understanding" with the Coast Guard, 48 Fed.Reg. 11,365 (1983), the purpose of which is to "set forth clearly the boundaries of the authority" of the Coast Guard and OSHA "in prescribing and enforcing standards or regulations affecting the occupational safety and health of seamen aboard vessels inspected and certified by the Coast

Guard." *Id.* The agreement notes that "[t]he Coast Guard is the dominant federal agency with the statutory authority to prescribe and enforce standards or regulations affecting the occupational safety and health of seamen aboard inspected vessels." *Id.* While the agreement cedes essentially all authority over seamen to the Coast Guard, it does not address the division of responsibility between the two agencies regarding individuals other than seamen.

tion to enforcement actions, those purposes include the development of new standards that take form out of the experiences gained through unfortunate workplace incidents such as this one. Pursuant to 29 U.S.C. § 668, the Secretary also is authorized to coordinate occupational safety programs of each federal agency, and under Executive Order Number 12,196, 45 Fed.Reg. 12,769 (1980), the Secretary may undertake inspections and investigations regarding certain unsafe or unhealthy conditions to which federal employees, such as the Coast Guard officer who died in this accident, are exposed. In addition, we note that OSHA's regulations are not only place-oriented but also employer and program-oriented, so that it is not just working conditions that are regulated, but also the programs undertaken by employers to deal with workplace hazards. At the time these subpoenas were issued, it was not known in what direction OSHA was pursuing this investigation.[3] To support enforcement of an administrative subpoena that is challenged on the basis of jurisdictional authority and where the specific purpose of the subpoena has not been identified, we believe that a court need only satisfy itself that there is some colorable purpose appropriate under the authorizing act that would validate the enforcement of the subpoena.[4] Given our understanding of the background division of labor between OSHA and the Coast Guard in this area, and given both the broad construction applied to the Act, see *Whirlpool Corp. v. Marshall,* 445 U.S. 1, 100 S.Ct. 883, 63 L.Ed.2d 154 (1980); *Southern Ry. Co., supra,* and OSHA's broad powers of investigation, enforcement and rulemaking, we believe that the district court did not err in ordering enforcement of the subpoena against Hiller and its employees.

## III.

The Secretary appeals from the district court's refusal to disqualify the law firm of Crenshaw, Ware & Martin, who are representing Hiller in this administrative investigation, also from representing Muth and Speary, who have been individually subpoenaed to appear. In this case, the employees and employer have retained one firm to represent both interests and have waived potential conflict problems. There is no indication that the employees are being coerced into this representation, and they have no liability exposure, since OSHA's enforcement powers, of whatever character, are limited by the Act to employers. While OSHA does not object to counsel for the employees being present, it objects to this particular counsel on the grounds that it is entitled to question each employee outside the presence of the employer.

The Act provides that "the Secretary ... is authorized ... *to question privately* any such employer, owner, operator, agent or employee." 29 U.S.C. § 657(a)(1) (emphasis supplied). The Secretary interprets this to mean that he can exclude an employer or an employer's representative from any meeting with an employee. Further, he asserts that this ban includes the ability to ban a jointly-representing attorney. He cites to no law on point for this sweeping proposition beyond a series of plainly inapplicable cases from the area of criminal law.

We are disturbed by the implication that the attorneys involved here are merely shills for Hiller. Even if they are representing both parties, the representations are of necessity separate. While both groups have waived potential conflicts, should an actual

---

3. Since the beginning of this litigation, however, OSHA has notified Hiller that it has been charged with violating the OSHA standard at 29 C.F.R. § 1915.99(e)(2)(ii), a subsection of OSHA's hazard communication standard for shipyard employment. Hiller would like us to address the merits of the preemption question at this time. As noted, however, we stand at only the beginning of this action, and the resolution of the jurisdictional question on the merits is left in the first instance to the expert administrative agency, only after the decision of which is it proper for this court to pass decision.

4. It thus remains an open question as to the task a court faces where a specific purpose for the administrative subpoena has been identified. In such instances, the question is whether a court is confined only to examining the validity of the specific purpose enunciated, or whether it may look broadly at the statute to find some purpose that would support the agency's action. As a question not before us today, we express no opinion on it.

conflict develop, the attorneys would be required to advise both parties of that conflict and either terminate their representation of both parties, terminate their representation of one party and keep the information confidential, or obtain waivers from both parties. Virginia Code of Professional Responsibility DR 5–105. To paint the lawyers as the "employer's representative," as OSHA does, with the strong suggestion that they are the strongarm enforcer of discipline against employees otherwise champing at the bit to "tattle" on their bad employer, seems totally unfair.

Correlatively, the Secretary argues that allowing the employees' chosen attorneys to be present at this meeting will create a chilling effect that, if the Secretary is to be believed, heralds the next ice age. We do not believe that the Act allows the Secretary to strike an employee's chosen counsel from attending the required questioning under the administrative subpoena simply because the employee and employer are represented by the same counsel. Standard rules of ethical practice remain in effect, and are well suited to the proper handling of the dangers the Secretary prognosticates. The flimsy arguments presented to us are certainly insufficient to support stripping a person of the lawyer of her choice in these circumstances.[5]

IV.

For the reasons stated above, we affirm.

*AFFIRMED.*

---

**5.** We note that we do not adopt here a *per se* rule against lawyer disqualification; we believe that the proper approach is to examine each case on its own set of facts. While we admit we find it somewhat difficult to conceptualize the facts under which disqualification would be proper, on this sensitive matter that comes before the court for the first time, hard and fast rules are particularly inappropriate.