574 F.2d 119
 6 O.S.H. Cas.(BNA) 1481, 1978 O.S.H.D. (CCH) P 22,671
Ray MARSHALL, Secretary of Labor, U. S. Department of Labor,
Plaintiff- Appellee,
v.
NORTHWEST ORIENT AIRLINES, INC., Defendant-Appellant.
 Nos. 592, 593, Dockets 77-6103, 77-6112.
 United States Court of Appeals,
Second Circuit.
 Argued March 23, 1978.
Decided April 7, 1978.
 
 James Nespole, New York City (Robert Thrun, Douglas P. Catalano and Reavis & McGrath, New York City, of counsel), for defendant-appellant.
 John A. Bryson, Atty., U. S. Dept. of Labor, Washington, D. C. (Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety and Health, and Allen H. Feldman, Acting Counsel for Appellate Litigation, Washington, D. C., of counsel), for plaintiff-appellee.
 Before KAUFMAN, Chief Judge, and SMITH and MESKILL, Circuit Judges.
 IRVING R. KAUFMAN, Chief Judge:
 
 
 1
 Northwest Airlines, Inc. ("Northwest") seeks to prevent representatives of the Occupational Safety and Health Administration ("OSHA") from inspecting one of its airport facilities, claiming that the safety aspects of the hangar in question are already regulated by the Federal Aviation Administration ("FAA"). It adopts this position notwithstanding the fact that an administrative record concerning the alleged overlap in jurisdiction has not been assembled and discovery is yet to commence. We agree with the determination of the district court that the challenge to OSHA's jurisdiction cannot be brought until Northwest has more adequately developed the record by exhausting its existing administrative remedies.
 
 I.
 
 2
 On October 27, 1976, Efraim Zoldan, an OSHA compliance officer, attempted to inspect Northwest's Hangar No. 1 at John F. Kennedy International Airport. After being denied entrance by the agent in charge, he sought an inspection warrant from Magistrate Vincent Catoggio on November 4, 1976. Relying on affidavits establishing that Northwest's hangar had in the past been cited for 13 violations of OSHA standards, the magistrate issued a warrant.
 
 
 3
 The following day, Northwest again turned Zoldan away when he attempted to enter its facility, ostensibly because it would soon be moving to quash the warrant. It did so that very afternoon, arguing that section 4(b)(1) of the Occupational Safety and Health Act ("Act") explicitly withdrew from OSHA any jurisdiction over safety matters already regulated by other federal agencies. Northwest contended that the FAA oversaw the occupational safety of hangar workers, and cited an opinion by Administrative Law Judge Jerome C. Ditore as support for this principle.
 
 
 4
 The opinion relied upon concerned the airline's challenge to a previous OSHA citation issued for failing to provide adequate protection to employees changing landing lights on aircraft. After a 24-day hearing, Judge Ditore determined that the FAA had preempted this area by promulgating regulations "affecting the occupational safety and health of ground maintenance personnel changing landing lights through the leading edge flap cavities of Boeing 747 aircraft." A member of the Occupational Safety and Health Review Commission subsequently granted the Secretary of Labor's petition for discretionary review of Judge Ditore's decision by the full Commission, but such plenary consideration has been delayed pending the appointment of a third commissioner.
 
 
 5
 Upon being apprised of Judge Ditore's decision, Magistrate Catoggio vacated the search warrant. He interpreted the earlier ruling to indicate that the FAA had preempted "at least part of the area (of airline safety)," and thus had, for section 4(b)(1) purposes, prevented OSHA from exercising jurisdiction over any safety hazards within the hangar. The Secretary of Labor then appealed to the district court, which reinstated the warrant, finding that the challenge to OSHA's jurisdiction was premature, and requiring the airline to first exhaust all administrative remedies.
 
 II.
 
 6
 Section 4(b)(1) of the Occupational Safety and Health Act, 29 U.S.C. § 653(b) (1), provides that:
 
 
 7
 Nothing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies . . . exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health.
 
 
 8
 In essence, this provision is designed to eliminate any duplication in the efforts of federal agencies to secure the well-being of employees. At the same time, however, section 4(b)(1) was not intended by Congress to eliminate OSHA's jurisdiction merely on the basis of hypothetical conflicts. Employees should not lightly be denied the protection of OSHA for, as the Senate Report accompanying the Act noted, "(t)he problem of assuring safe and healthful workplaces for our working men and women ranks in importance with any that engages the national attention today." S.Rep.No. 91-1282, 91st Cong., 2d Sess., reprinted in 3 U.S.Code Cong. & Admin.News pp. 5177, 5178 (1970). Thus, as the section's wording makes clear, a sister agency must actually be exercising a power to regulate safety conditions in order to preempt OSHA. Were this not the case, many occupational health hazards might remain uncorrected merely because some agency whose prime concern is not safety has failed to take notice of that area.
 
 
 9
 In a similar vein, section 4(b)(1) is not designed to provide wholesale exceptions for entire industries. See, e. g., Southern Pacific Transportation Co. v. Usery, 539 F.2d 386 (5th Cir. 1976), cert. denied, 434 U.S. 874, 98 S.Ct. 222, 54 L.Ed.2d 154 (1977); Southern Ry. v. OSHRC, 539 F.2d 335 (4th Cir.), cert. denied, 429 U.S. 999, 97 S.Ct. 525, 50 L.Ed.2d 609 (1976); Baltimore & Ohio R. R. v. OSHRC, 179 U.S.App.D.C. 97, 548 F.2d 1052 (1976). The exact standard to be applied in determining the scope of preemption, however, is less than crystal-clear. The Southern Pacific court concluded that agency rule-making directed "at a working condition defined either in terms of a 'surrounding' or a 'hazard' displaces OSHA coverage of that working condition." 539 F.2d at 391. The Fourth Circuit, on the other hand, has established a somewhat different test, concluding that "working conditions" encompass:
 
 
 10
 an area broader in its contours than the "particular discrete hazards" advanced by the Secretary, but something less than the employment relationship in its entirety . . . . (They include) the environmental area in which an employee customarily goes about his daily tasks.
 
 
 11
 539 F.2d at 339.
 
 
 12
 As these vague standards demonstrate, a determination of preemption requires an inquiry into complex issues of law and fact. Accordingly, it is proper for a court to defer examination of such difficult questions of agency jurisdiction until a party has fully exhausted its administrative remedies. See, e. g., Marshall v. Able Contractors, Inc., 573 F.2d 1055 (9th Cir. 1978). The exhaustion requirement is particularly apt in cases such as this, where administrative review is forthcoming and the agency will be given a chance to apply its expertise. See In re Restland Memorial Park, 540 F.2d 626, 628 (3d Cir. 1976); cf. Hayes-Albion Corp. v. Marshall, Civil No. 77-205 (N.D.Ohio, filed Oct. 14, 1977).
 
 
 13
 The airline asks this Court to conclude that an entire hangar, and the multitude of possible hazards within it, are excluded from OSHA protection. Given the breadth of the problem, our inquiry would of necessity be amorphous, unwieldy and lacking in expertise. In contrast, following an OSHA inspection and its administrative review, the issues will have been greatly refined, and we will be made aware of the specific types of hazards that OSHA officials believe are regulated by the FAA. Certainly, given Congress's determination to create a "comprehensive, nation-wide" approach to improving occupational safety, the agency charged with that mandate should be accorded an initial opportunity to inspect potential safety hazards.
 
 III.
 
 14
 In addition to disputing OSHA's jurisdiction, Northwest contests the constitutionality of the warrantless searches conducted by the agency's inspectors. The airline notes that in most instances, a warrantless search is inconsistent with the protections of the fourth amendment. See, e. g., Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); See v. Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). In fact, the greater number of courts to consider this issue have found unconstitutional the warrantless search procedure authorized by section 8(a) of the Act. See, e. g., Usery v. Centrif-Air Machine Co., 424 F.Supp. 959 (N.D.Ga.1977); Dunlop v. Hertzler Enterprises, 418 F.Supp. 627 (D.N.M.1976); Brennan v. Gibson's Products, Inc., 407 F.Supp. 154 (E.D.Tex.1976). But see Brennan v. Buckeye Industries, Inc., 374 F.Supp. 1350 (S.D.Ga.1974). That question is now before the Supreme Court in Marshall v. Barlow's, Inc., probable jurisdiction noted, 430 U.S. 964, 97 S.Ct. 1642, 52 L.Ed.2d 354 (1977).
 
 
 15
 We need not decide, however, whether Congress could constitutionally authorize warrantless searches of all business premises. Nor need we determine whether the "pervasive regulation" of the airline industry, see, e. g., United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed. 2d 60 (1970), creates an exception to the warrant requirement. Assuming arguendo that warrantless searches are unconstitutional, it would then be proper for a court to imply a warrant requirement to preserve the statute's constitutionality. See, e. g., Empire Steel Mfg. Co. v. Marshall, 437 F.Supp. 873 (D.Mont.1977); Marshall v. Chromalloy American Corp., 433 F.Supp. 330 (E.D.Wis.1977). In re Establishment Inspection of Gilbert and Bennett Mfg. Co., Civil No. 77-C-856 (N.D.Ill., filed Apr. 12, 1977); Hayes-Albion Corp. v. Marshall, supra; Brennan v. Gibson's Products, Inc., supra. But see, e. g., Barlow's, Inc. v. Usery, 424 F.Supp. 437 (D.Idaho 1976), stay granted sub nom. Marshall v. Barlow's Inc., 429 U.S. 1347, 97 S.Ct. 776, 50 L.Ed.2d 739, probable jurisdiction noted, 430 U.S. 964, 97 S.Ct. 1642, 52 L.Ed.2d 354 (1977). The Supreme Court followed exactly this course of action in Camara, supra.
 
 
 16
 Adhering to these precedents, the district court issued a warrant, relying on Northwest's previous OSHA violations for a showing of probable cause. On this appeal, the airline does not dispute the existence of factual support for this finding. Accordingly, having determined that a warrant requirement can properly be implied if the statute, as written, were unconstitutional, we affirm the order of the district court reinstating the inspection warrant.